IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Bryan Soltes, | ) | |
| | ) | C.A. No. 6:22-04019-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER & OPINION** |
| | ) | |
| Snider Tire, Inc. d/b/a Snider Fleet Solutions, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Snider Tire, Inc. d/b/a Snider Fleet Solutions' ("Snider") motion for summary judgment. For the reasons below, the court denies Snider's motion.

**I. BACKGROUND**

In this premises-liability case, Plaintiff Bryan Soltes ("Soltes") seeks to recover damages for injuries he allegedly sustained while making a delivery at one of Snider's warehouses. The following facts are either undisputed or presented in the light most favorable to Soltes, the nonmoving party.

Snider provides maintenance services to commercial vehicle fleets. (Mot. Summ. J. Ex. 1 (Ewing Dep. 11:9-21), ECF No. 22-2.) Part of its business involves mounting and dismounting tires. (Id. Ex. 1 (Ewing Dep. 8:19-24, 12:9-11), ECF No. 22-2.) At its Greenville, South Carolina location, unmounted – or "loose" – tires are delivered to one of six loading docks. (Id. Ex. 1 (Ewing Dep. 20:4-18, 26:16-25), ECF No. 22-2.) Loose tires are then taken to the back of the warehouse to be mounted onto wheels. (Id. Ex. 1 (Ewing Dep. 8:21-22, 20:11-18), ECF No. 22-2.) Once mounted, the tires are taken by forklift back to the docking area, where they are stacked vertically against each other in a domino-like fashion while awaiting shipment. (Id. Ex.

1

1 (Ewing Dep. 20:11-18, 23:3-15, 65:7-13), ECF No. 22-2.)  The docking area also often contains loose tires waiting to be sent to another Snider facility for retreading or "to be thrown in a scrap trailer."  (Mot. Summ. J. Ex. 1 (Ewing Dep. 10:14-19, 15:3-6, 23:19-23), ECF No. 22-2.)  These loose tires, which weigh far less than the mounted tires, are stacked horizontally on top of one another.  (Id. Ex. 1 (Ewing Dep. 64:4-17), ECF No. 22-2.)  Although the conditions at the warehouse "can look very different from one day to the next," (Mem. Supp. Summ. J. 3, ECF No. 22-1), below is an example of vertical and horizontal stacks in the docking area for illustrative purposes:



On January 31, 2020, Soltes arrived at Snider's Greenville facility to deliver beverages on behalf of his employer, Coca-Cola Bottling Company Consolidated ("CCBCC").  (Not. Removal Ex. 1 (Compl. ¶¶ 5-6), ECF No. 1-1); (Resp. Opp'n 1, ECF No. 23.)  Soltes testified that all the other loading docks were occupied at the time, so he had to back his truck up to the dock farthest from the delivery area inside the warehouse.  (Mot. Summ. J. Ex. 2 (Soltes Dep. 43:20-44:2, 47:2-6), ECF No. 22-3.)  Soltes then exited his truck, entered the warehouse near the

dock closest to the delivery area, and walked back towards the dock where his truck was parked. (Id. Ex. 2 (Soltes Dep. 47:2-16), ECF No. 22-3.) Inside the warehouse, Soltes noticed "a messy scene of tires everywhere" and estimated that he had a "4-foot opening" between two sets of vertically stacked tires through which he could make the delivery. (Id. Ex. 2 (Soltes Dep. 47:17-24, 53:25-54:7), ECF No. 22-3.)

After opening the truck's roll-up door and loading his CooLift[1] with beverage pallets, Soltes began to maneuver through the opening. (Id. Ex. 2 (Soltes Dep. 44:3-8, 53:10-54:16), ECF No. 22-3.) Because a tire stack "block[ed] a straight pathway," Soltes had to pull the CooLift off the truck at an angle. (Resp. Opp'n Ex. 2 (Soltes Dep. 124:4-7, 124:24-125:10), ECF No. 23-2.) According to Soltes, the CooLift was barely off the truck when it suddenly stopped. (Mot. Summ. J. Ex. 2 (Soltes Dep. 53:25-54:19), ECF No. 22-3.) Soltes, who claims that he was facing forward to check for "potential obstacles," testified that he "didn't . . . know what happened" but felt his "whole foot and leg [go] numb." (Id. Ex. 2 (Soltes Dep. 55:15-20), ECF No. 22-3); (Resp. Opp'n Ex. 2 (Soltes Dep. 124:4-19), ECF No. 23-2.) When he turned around, however, he realized that a "full-sized tire at the end of [a] domino stack" had fallen over and "clipped the back side of [his] heel." (Mot. Summ. J. Ex. 2 (Soltes Dep. 55:21-25), ECF No. 22-3.)

Soltes claims that the tire broke "several bones" in his right foot and ankle, which required surgery. (Resp. Opp'n 2, ECF No. 23.) Soltes also maintains that he was fired from his

---

[1] A CooLift is piece of equipment similar to a hand truck. It has six wheels and an automated lift system to raise and lower pallets of product. (Mot. Summ. J. Ex. 2 (Soltes Dep. 25:12-27:22), ECF No. 22-3.) Soltes estimates that a CooLift is about two feet wide and five feet long. (Id. Ex. 2 (Soltes Dep. 27:5-9), ECF No. 22-3.)

3

position at CCBCC "because he could no longer physically perform his job duties" due to his injuries. (Id. 2, ECF No. 23.)

On October 6, 2022, Soltes filed suit against Snider in the Greenville County Court of Common Pleas. (Not. Removal Ex. 1 (Compl.), ECF No. 1-1.) After removing the case to federal court, Snider moved for summary judgment on September 5, 2023. (Mot. Summ. J., ECF No. 22.) Soltes responded in opposition on September 13, 2023, (Resp. Opp'n, ECF No. 23), and Snider replied on September 19, 2023, (Reply, ECF No. 24.) This matter is now ripe for review.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020).

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, the burden shifts to the nonmoving party to "go beyond the pleadings" and come forward with "specific facts showing that there is a genuine issue for trial." Id. at 324. To withstand summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

4

### III. DISCUSSION

Soltes asserts a single claim for negligence. To establish negligence, a plaintiff must prove "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach of duty." Fowler v. Hunter, 697 S.E.2d 531, 534 (S.C. 2010). In a premises-liability case, a property owner's duty of care is determined by the plaintiff's status as an invitee, licensee, or trespasser. Sims v. Giles, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001).

Here, there is no dispute that Soltes was an invitee – or more specifically, a business visitor – on Snider's premises. Id. at 862. ("A business visitor . . . is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner."). "Generally, the owner of property owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from the breach of such duty." Singleton v. Sherer, 659 S.E.2d 196, 205 (S.C. Ct. App. 2008). To recover damages, Soltes must show either "(1) that [his] injury was caused by a specific act of [Snider] which created the dangerous condition; or (2) that [Snider] had actual or constructive knowledge of the dangerous condition and failed to remedy it." Anderson v. Racetrac Petroleum, Inc., 371 S.E.2d 530, 531 (S.C. 1988); Cook v. Food Lion, Inc., 491 S.E.2d 690, 691 (S.C. Ct. App. 1997).

In moving for summary judgment, Snider makes three arguments. First, Snider argues that it is entitled to summary judgment because there is no evidence that the tire stack that Soltes bumped into constituted a dangerous condition. (Mem. Supp. Summ. J. 9, ECF No. 22-1); see Daniels v. Food Lion, LLC, No. 5:16-cv-00936-RBH, 2018 WL 5762081, *6 (D.S.C. Nov. 2,

2018) (unpublished) ("[I]f there is no evidence of a dangerous condition, then the Court must grant summary judgment."). Snider's Rule 30(b)(6) witness, however, conceded that a two- to three-hundred-pound commercial truck tire could present a danger. (Resp. Opp'n Ex. 1 (Stevens Dep. 28:9-12), ECF No. 23-1.) A reasonable jury, moreover, could find that it was dangerous for such tires to be stacked vertically and left unsecured in an area of ingress and egress.

In a related argument, Snider contends that summary judgment is proper because there is no evidence that its employees were negligent in creating the allegedly dangerous condition. (Mem. Supp. Summ. J. 9, ECF No. 22-1); see Pringle v. SLR, Inc. of Summerton, 675 S.E.2d 783, 787 (S.C. Ct. App. 2009) ("The showing that a defendant created a condition that led to a plaintiff's injury is not . . . sufficient to survive a summary judgment motion unless there is evidence that in creating the condition, the defendant acted negligently."). This argument is also unavailing. There is evidence that Snider did not formally train employees on how to stack tires, left vertically stacked tires unsecured, and failed to place warning signs in the warehouse, despite knowing (1) that vertically stacked tires could be tipped over and (2) that nonemployees used its loading docks to make deliveries. (Resp. Opp'n Ex. 1 (Stevens Dep. 22:6-9, 25:24-26:16, 31:14-17, 32:10-13, 33:4-35:7), ECF No. 23-1.)

Finally, Snider asserts that even if the tire configuration was dangerous, summary judgment is warranted because the danger was "open and obvious" to Soltes. (Mem. Supp. Summ. J. 12, ECF No. 22-1.) Under South Carolina law, a property owner generally has no duty to warn of dangers that are open and obvious or known to an invitee. Larimore v. Carolina Power & Light, 531 S.E.2d 535, 539 (S.C. Ct. App. 2000). An exception to this general rule exists, however, when the property owner "should anticipate the harm despite such knowledge or obviousness." Callander v. Charleston Doughnut Corp., 406 S.E.2d 361, 362 (S.C. 1991)

(emphasis omitted) (adopting Restatement (Second) of Torts § 343A (1965)).  Here, even if the tire stack was an open and obvious danger, a question that the court does not decide, there remains a genuine issue of material fact about whether Snider should have anticipated that Soltes might be injured.  See, e.g., Padgett v. Colleton Cnty, 679 S.E.2d 533, 537 (S.C. Ct. App. 2009); Creech v. S.C. Wildlife & Marine Res. Dep't, 491 S.E.2d 571, 574-75 (S.C. 1997); Callander, 406 S.E.2d at 363.  More specifically, a reasonable jury could conclude that Snider had reason to expect that Soltes would choose to encounter the dangerous condition in order to fulfill his employment obligations.  See Restatement (Second) of Torts § 343A cmt. f. (1965) (explaining that harm might be anticipated when "the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk").

## IV. CONCLUSION

In sum, summary judgment is inappropriate because genuine issues of material fact exist as to whether Snider negligently created a dangerous condition and whether it should have anticipated the harm to Soltes.

It is therefore

**ORDERED** that Snider's motion for summary judgment, document number 22, is denied.

**IT IS SO ORDERED.**

                                              s/Henry M. Herlong, Jr.
                                              Senior United States District Judge

Greenville, South Carolina
September 20, 2023